JOHN W. Ross et ux., appellees, v. ANNA A. GORDON, individually and as guardian of the property of Jackie Roberts, and L. V. GORDON, appellants.

No. 50258.

(Reported in 109 N.W.2d 208)

MAY 2, 1961.

Ted V. Ruffin, of Cedar Rapids, for appellants.

George C. Claassen, of Cedar Rapids, for appellees.

PETERSON, J.—This is an action in equity for specific performance of a contract of sale of property in Cedar Rapids. Plaintiffs also prayed for quieting title against defendants. Defendants filed cross-petition praying for quieting title against plaintiffs.

Defendant Anna A. Gordon had adopted her granddaughter Jacqueline Roberts (commonly known as Jackie) sometime prior to 1941. Jackie was four years of age that year. She had a minor automobile accident. Same was settled for $150. It appears that $100 was used for doctor bills and other expenses, leaving $50 in the hands of the guardian. In March of 1941 Mrs. Gordon filed petition for appointment as guardian of the property of Jackie.

Anna Gordon had been in the habit of purchasing some lots and properties at tax sale for herself. On June 19, 1941, she purchased a vacant lot described as Lot 77 in Lenox Place,

Cedar Rapids, for $33. She had the grantee in the tax deed denominated as: "Anna Gordon, guardian of Jackie Roberts, a minor."

After purchase of the lot, defendant L. V. Gordon, husband of Anna, partially filled in the lot, built a foundation, purchased an old house for $750, and moved it on the lot. He and Anna made other improvements costing $500 cash, and Mr. Gordon performed about three months of labor.

In the fall of 1942, defendants met plaintiffs, who had recently moved from Wyoming, and who were looking for a house to rent. The Gordons said they would rent the property to them for $25 per month. This rental transaction was consummated and plaintiffs continued to live in the house as tenants until July 1944.

Mr. and Mrs. Gordon were then desirous of selling the property, and took prospective purchasers to the house. Mr. and Mrs. Ross felt they might lose the place as tenants and were looking for another property to rent. It was then suggested by defendants that they would sell the property to plaintiffs for $2500, giving them credit of $250 as a down payment from the rent they had already paid, and accepting the balance on a monthly payment plan of $25 per month including interest at 5%. Mr. and Mrs. Ross agreed, and Mr. Gordon said he would have a contract prepared and bring it home, and they could come over and sign it.

A few days later Mrs. Gordon called Mrs. Ross by telephone and said they had the contract at the house. That evening Mr. and Mrs. Ross went over to the Gordon home. The record discloses the following conversation, from Mr. Ross' testimony:

"Q. Who produced—Were there some contracts produced there during that evening? A. Yes, Mr. Gordon handed me a contract; he said, Our name is already on it.

"Q. And was or was not Mrs. Gordon there at that time? A. She was present."

The first paragraph of the contract contained the following statement as to vendors: "Anna A. Gordon, Guardian of Jackie Roberts & L. V. Gordon." However, the contract was signed only: "*Anna A Gordon* and L. V. Gordon."

Mr. and Mrs. Ross signed and took their copy of the contract home with them. The payments were to be made on the sixth of each month, and according to Exhibit 19 introduced in evidence, starting with August 6, 1944, plaintiffs paid regularly on the contract on the sixth day of each month until May 6, 1952.

Mr. Ross always made his payments at the Gordon home and usually by check. Occasionally he paid in cash, at which time he received a receipt from Mr. or Mrs. Gordon. Most of the checks were made to defendant L. V. Gordon, although a few checks were made to Mrs. Gordon. No checks were ever made payable to Mrs. Gordon as guardian. When he paid cash, practically all receipts were signed "Mrs. Gordon". There were offered in evidence 29 receipts so signed by Mrs. Gordon throughout the years.

In May of 1952 when Mr. Ross came to the house to make his payment he told Mrs. Gordon he was ready to pay the balance on the contract, which, according to his computation as shown by Exhibit 19, was $444.95. According to Exhibit 20, which was Mrs. Gordon's computation, the balance was $434.41. He stated he would pay what was shown on his computation.

On that occasion Mrs. Gordon took the payment, but she told him that the title was so mixed up it could not be straightened out. At that time, after eight years, for the first time she also told him the signature on the contract was not hers.

Mr. Ross consulted a lawyer, who wrote a letter to Mr. and Mrs. Gordon, copy of which is in evidence, tendering the balance due on the contract, and demanding a deed and abstract. Mr. and Mrs. Gordon refused to deliver the deed and abstract. This action was then started in April of 1953. Mr. Gordon departed this life during the pendency of the action and he is in court under an administrator of his estate substituted as party defendant.

During the eight years Mr. and Mrs. Ross were paying for the property they expended the following items: payment of principal for property, $2500; this includes $500 deposited in the clerk's office; improvements made on the property $4069.50; paving assessments $233.89; street oiling assessments $75.20;

sewer assessments $119.67; regular taxes through the years $650.97; interest on the contract $615; approximate payment for insurance $125; total expenditures by plaintiffs $8389.23. Witnesses testified to value of the property in 1959 as ranging from $6500 to $8500.

Jackie was married September 10, 1955, when she was 19 years of age, so she is now of legal age.

Plaintiffs' petition prayed for specific performance of the contract and for quieting of title. The case was first tried in March 1955. The record is not clear, but it would appear that neither party was satisfied with the decision of the court, and entered into a stipulation for a new trial. The first decision was set aside and held for naught by order of court. Amended and substituted petition in four counts and amended and substituted answer and cross-petition were filed. The case was fully tried again in July 1959. The trial court decided in favor of plaintiffs, granting specific performance as to the contract, upon plaintiffs depositing an additional $1.51 with the clerk, quieting title in favor of plaintiffs, and dismissing defendants' cross-petition for quieting title. Defendants appealed.

I. There is serious question about the regularity of the guardianship. After the petition for appointment was filed by Mrs. Gordon on March 15, 1941, we find the following entry on the probate calendar sheet: "Mrs. Anna Gordon is appointed guardian of said minor." We then find the further statement: "Bond $300.00. No surety required." Then the statement: "Bond filed and approved. Letters issued." However, the word "approved" is struck out with a heavy ink line. While a qualification was filed by the guardian, yet no legal bond was ever filed. The bond part of the document filed was eliminated by a heavy ink cross striking out all of the bond section above the qualification.

Statutory provisions concerning guardians *for the property* of minors are as follows:

"668.3 Guardian of property. If a minor owns property, a guardian must be appointed to manage the same. * * *."

"668.5 Bond and oath of guardian of property. Guardians of the property of a minor *shall* give bond, with surety to be

approved by the court or clerk, in a penalty double the value of the personal estate and of the rents and profits of the real estate of the minor * * *." (Emphasis ours.)

These statutory provisions are definite and absolute and if there is no compliance with such statutes there is serious question as to the regularity of the guardianship *as to the property* of the minor.

There is a distinction between the property situation and the guardianship of the person.

Section 668.7 as to guardianship of the person provides: "The court or judge *may* require a bond to be given by the guardian of the person of minors * * *." (Emphasis ours.)

We have held the guardian of the person and the guardian of the property of minors need not be the same person. Lawrence v. Thomas, 84 Iowa 362, 51 N.W. 11; Finken v. Porter, 246 Iowa 1345, 1354, 72 N.W.2d 445, 450; In re Guardianship of Carrick, 250 Iowa 1181, 98 N.W.2d 315.

II. Anna A. Gordon, after eight years of silence, claimed she did not sign the contract of sale to plaintiffs. Her claim is not too important because her acquiescence when it was signed by the Rosses and her subsequent acceptance of the payments and benefits thereunder constituted ratification of the contract, and estopped her from denying that she is bound by its terms. Sheldon v. Bigelow, 118 Iowa 586, 92 N.W. 701; Elliott on Contracts, Volume 5, section 4938; In re Estate of McDonald, 167 Iowa 582, 149 N.W. 897; 31 C. J. S., Estoppel, sections 87, 88, 89 and 90; Anfenson v. Banks, 180 Iowa 1066, 163 N.W. 608, L. R. A. 1918D 482.

Mrs. Gordon saw plaintiffs sign the contract, and raised no objection. She made no disclaimer as to her signature. During the eight years Mr. Ross paid on the contract on the sixth of each month, at the Gordon house.

Mr. and Mrs. Ross naturally thought when they saw the name Anna A. Gordon on the contract it was her signature. Even if Mr. Gordon had signed her name on the contract for her she would now be estopped from denying that she was a party to the contract by her actions and her long silence.

We have held under certain circumstances the signature is not essential to bind a party to a contract. In Henderson v. Henderson, 136 Iowa 564, 566, 114 N.W. 178, 179, Mr. and Mrs. Arthur C. Henderson and Mr. and Mrs. Fred O. Kirk executed a contract with Sarah E. Henderson, selling her a certain tract of land. They signed the contract, but it was not signed by Sarah E. Henderson. A copy was delivered to her, she placed it on record, and entered into possession of the property through a tenant. When an action was started they raised a question because Mrs. Henderson had not signed the contract. In the case we said:

"Signature is not always essential to the binding force of an agreement. If accepted and acted upon by the parties as a binding engagement, mutuality appears without formal signature. This is elementary. * * * The contract recites a consideration, and, even if it did not, it conveyed a right to the widow which has been accepted and acted upon by her, and this is sufficient."

The doctrine of estoppel is defined in the case of In re Estate of McDonald, supra, at pages 587, 588 of 167 Iowa, page 899 of 149 N.W., as follows: "That is based on the doctrine of estoppel, and denies to him the right to gainsay that which, by his conduct, he lead the other person to believe was true, and in reliance upon which the other person in good faith acted. Thus where one asserts a fact to be true, and another, in good faith, relying upon the assertion, acts so that to deny it would be prejudicial to him, the party making this assertion cannot afterwards, under such circumstances, assert to the contrary to the prejudice of the other. But in order to create an estoppel it must appear that the other party relied upon the statements made, believed them to be true, and acted upon them, and that to permit a denial thereafter would work prejudice."

We approve the trial court's findings of fact upon which it based its conclusion of law that Anna A. Gordon was estopped from denying the full force and effect of the signature.

III. We approve and affirm the statement of facts and conclusions of law of the trial court for specific performance and

quieting plaintiffs' title against Anna A. Gordon and Ted V. Ruffin, administrator of the estate of L. V. Gordon.

We will modify the decision of the trial court in one respect. In order that complete relief be accorded between all parties, it is necessary that Jackie Roberts Fischel and her husband be made parties defendant. Jackie has never had her day in court, to which she is entitled, whether or not the guardianship is regular.

After Jackie became of age in 1955, plaintiffs should have amended their petition joining her and her husband as parties defendant. They are necessary parties to determine what, if any, rights Jackie has against plaintiffs.

Since neither plaintiffs, nor the trial court on its own motion, made them parties, it now becomes necessary that we remand this phase of the case for that purpose.

One clause of R. C. P. 25(c) provides: "When persons are not before the court who, although not indispensable, ought to be parties if complete relief is to be accorded between those already parties, and when necessary jurisdiction can be obtained by service of original notice in any manner provided by these rules or by statute, the court shall order their names added as parties and original notice served upon them."

We have authority, as established by precedent, to modify our approval of the trial court's decision to the extent of ordering that they now be brought in as parties defendant. Nissen v. Nissen Trampoline Co., 241 Iowa 474, 485, 39 N.W.2d 92, 98. In the Nissen case we said: "Where, as in this case, the purchaser of the appellant's interest in the property was not a party to the action we are justified in remanding the case to the trial court for the purpose of bringing said purchaser in as a necessary party." Citing Gunnar v. Town of Montezuma, 228 Iowa 581, 293 N.W. 1.

Also see Dee v. Collins, 235 Iowa 22, 28, 29, 15 N.W.2d 883, 887, where we said: "We have repeatedly held, however, that when essential to effectuate justice, an equity case may be remanded for such further proceedings as the circumstances may require. * * * Since the trial court refused to receive defendants' evidence, which is not before us, we have no way of

knowing whether defendants can establish any of their pleaded defenses. The cause is therefore remanded for the taking of testimony in support of such defenses and any rebuttal thereof. * * *."

We, therefore, instruct plaintiffs to file an application within thirty days after the procedendo has been filed, containing a prayer to have Jacqueline Roberts Fischel and her husband joined as parties defendant in this case for the purpose of presentation of evidence by Jackie and any other parties in the case.

After notice has been given under proper order of court on such application, and time for appearance has expired, the trial court shall assign the matter for hearing.—Modified and affirmed.

All JUSTICES concur.