# IN THE SUPREME COURT OF IOWA

No. 13–0102

Filed October 18, 2013

**LIFE INVESTORS INSURANCE COMPANY OF AMERICA,**

Appellant,

vs.

**ESTATE OF JOHN M. CORRADO** and **FEDERAL CITY REGION, INC.,**

Appellees.

Certified questions of law from the United States District Court for the Northern District of Iowa, Edward J. McManus, Judge.

Certified questions from the United States District Court for the Northern District of Iowa concerning ratification of a contract and whether a party is estopped from denying a signature on a contract. **CERTIFIED QUESTION ANSWERED.**

David R. Levin of Drinker Biddle & Reath LLP, Washington, D.C., Wilford H. Stone and Amy L. Reasner of Lynch Dallas, P.C., Cedar Rapids, for appellant.

Robert R. Rush of Rush & Nicholson, P.L.C., Cedar Rapids, and Louis P. Malone III of O'Donoghue & O'Donoghue LLP, Washington, D.C., for appellees.

**WIGGINS, Justice.**

A federal court certified two questions to this court pursuant to Iowa Code section 684A (2013). The questions certified are as follows:

1. If a party receives a copy of an executed contract with that party's signature thereon, even where it is not known who applied the party's signature to the contract or whether the signature was authorized, and the party (a) does not challenge the signature or otherwise object to the contract, and (b) accepts benefits and obligations under the contract for at least six years, then has the party ratified the contract and is the party, therefore, bound by the terms of the contract?

2. If a party receives a copy of an executed contract with that party's signature thereon, even where it is not known who applied the party's signature thereto, and the party (a) does not challenge the signature and (b) accepts benefits and obligations under the contract for at least six years, then is the party estopped from challenging the signature as a basis for asserting that he is not bound by the contract?

We answer the first question in the affirmative. As the first question is determinative of the outcome in the certifying court, we find it unnecessary to answer the second question.

## I. Federal Court Proceedings.

On June 3, 2010, the United States District Court for the Northern District of Iowa granted summary judgment to plaintiff Life Investors Insurance Company of America (LICA) and determined that defendants John Corrado[1] and his company Federal City Region (collectively, Corrado) ratified a contract between Corrado and LICA. The contract was a settlement agreement resolving a dispute between the parties. On August 10, 2012, the United States Court of Appeals for the Eighth

---

[1]John Corrado died shortly after LICA filed the complaint in this action. His estate is substituted for him in this action.

Circuit reversed the grant of summary judgment and concluded the district court erred for two reasons. *Life Investors Ins. Co. of Am. v. Fed. City Region, Inc.*, 687 F.3d 1117, 1122 (8th Cir. 2012). The district court first erred in considering unauthenticated evidence, and second, in extending the doctrine of ratification in its order based on inapplicable Iowa caselaw and Restatement sections. *Id.* at 1121–22. The Eighth Circuit remanded the case to the district court for consideration of these issues. *Id.* at 1122–23.

On remand, the district court directed the parties to brief the issues of authentication and ratification, and subsequently entered an order on November 26, finding the settlement agreement authenticated. The district court determined that it was prudent to certify the ratification question to the Supreme Court of Iowa.

On November 29, Corrado filed a notice of appeal and a petition for writ of mandamus with the Eighth Circuit, arguing the district court violated the Eighth Circuit decision. The Eighth Circuit denied the motion. On January 11, 2013, the district court certified to our court the two questions previously set out in this opinion. The district court also provided us with a statement of facts pursuant to Iowa Code section 684A.3.

The statement of facts provides:

Beginning in 1977, John Corrado and his company, Federal City Region (FCR), collectively Corrado, marketed insurance products underwritten by Life Investors Insurance Company of America (LICA)[2]. Corrado received advances upon commissions, and in exchange therefor, executed promissory notes and assigned certain liens to LICA. Following disputes over the amount owed LICA by Corrado,

[2]Corrado initially marketed for Bankers United Life Assurance Company (BULAC), LICA's predecessor. BULAC and LICA shall collectively be referred to as LICA.

they met in February, 1993, in an effort to reach agreement on the dispute. On June 9, 1993, LICA provided Corrado with a copy of the [settlement agreement], stating that Corrado was to sign the [settlement agreement] and return it to LICA. On June 22, 1993, LICA came into possession of a copy of the [settlement agreement] purporting to bear Corrado's signature, and LICA promptly thereafter sent a copy of that signed [settlement agreement] to Corrado. The [settlement agreement] provided that its purpose was to resolve a financial dispute between the parties, and it provided for a series of advances and payments between LICA and Corrado. The disputed pre-settlement debt exceeded $1,400,000, and was reduced to $993,010 by the [settlement agreement]. From 1993 to 2000, the parties operated under the [settlement agreement], with commissions paid to Corrado and credits made as though no debt existed other than under the [settlement agreement]. From 1993 to 2000, Corrado did not challenge the signatures on the [settlement agreement]. Beginning in 2001, when the terms of the [settlement agreement] required Corrado to pay larger sums, he challenged the validity of the signatures on the [settlement agreement].

## II. Standard of Review.

It is within our discretion to answer certified questions from a United States district court. Iowa Code § 684A.1 (stating the court "may" answer a certified question). We may answer a question certified to us when (1) a proper court certified the question, (2) the question involves a matter of Iowa law, (3) the question "may be determinative of the cause . . . pending in the certifying court," and (4) it appears to the certifying court that there is no controlling Iowa precedent. *Id.*

## III. Legal Impediments to Answering the Questions.

Corrado asserts that we should decline to answer the certified questions because we lack specific factual findings on three issues: (1) whether Corrado and LICA formed a contract based on additional facts not contained in the certification order, (2) whether the doctrine of laches applies to bar the underlying claim, and (3) whether the contract is illegal.

We may decline to answer the certified questions if the court lacks specific findings of fact or finds the factual record to be unclear. *See Eley v. Pizza Hut of Am., Inc.*, 500 N.W.2d 61, 63 (Iowa 1993). We should not answer "questions which admit of one answer under one set of circumstances and a different answer under another, neither of which is inconsistent with the certificate." *Atlas Life Ins. Co. v. W.I. S., Inc.*, 306 U.S. 563, 573, 59 S. Ct. 657, 662, 83 L. Ed. 987, 994 (1939). Finally, we restrict our answer to the facts provided by the certifying court when answering a certified question. *Willow Tree Invs., Inc. v. Wilhelm*, 465 N.W.2d 849, 849 (Iowa 1991).

**A. Whether Corrado and LICA Formed a Contract Based on Additional Facts Not Contained in the Certification Order.** Corrado contends we need to consider additional facts to determine if the parties formed a contract before we can answer the certified questions. We disagree.

Additional facts are not necessary to answer the first certified question concerning ratification of a contract. Corrado argues the parties never formed a contract, based on his experience and communication with LICA. Corrado identifies various facts to show the parties never formed a contract from his viewpoint.

However, it is not necessary for us to consider additional facts to determine whether Corrado ratified the contract signed by an unidentified party. As we explain later in this opinion, Corrado could subsequently ratify the contract even without having initially known the terms or without an initial meeting of the minds between him and LICA.

Further, whether Corrado expressly or implicitly authorized a person to sign on his behalf is not a necessary fact to determine whether Corrado ratified the contract. A principal may ratify the unauthorized

act of an agent. *See Abodeely v. Cavras*, 221 N.W.2d 494, 502 (Iowa 1974) (stating a factor to determine whether a contract is ratified often is whether a principal accepted benefits from an agent's unauthorized act). Even if the actor who signed the contract was not Corrado's agent at the time of signing, "[a] person may ratify the act of an actor who was not an agent at the time of acting," providing the actor purports to be the person's agent or assumed to be the person's agent. Restatement (Third) of Agency ch. 4, intro. note, at 304 (2006). Therefore, we do not need additional facts on this issue to answer the certified questions.

**B. Whether the Doctrine of Laches Applies to Bar the Underlying Claim.** The doctrine of laches is an equitable doctrine that is " 'premised on unreasonable delay in asserting a right, which causes disadvantage or prejudice to another.' " *Sahu v. Iowa Bd. of Med. Exam'rs*, 537 N.W.2d 674, 676 (Iowa 1995) (quoting *Comm. on Prof'l Ethics & Conduct v. Wunschel*, 461 N.W.2d 840, 846 (Iowa 1990)). Some courts have referred to the doctrine of laches as a defense to equitable remedies but not a defense to bar a claim of legal relief. *See* 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 2.4(4), at 105 (2d ed. 1993).

It has long been the law in Iowa "[w]hen an unauthorized agreement of an agent has been ratified by his [or her] principal, an action lies thereon, as though originally made by due authority." *Lyon Cnty. Nat'l Bank v. Carsten Winter Estate*, 214 Iowa 533, 539, 242 N.W. 600, 603 (1932); *accord* Restatement (Third) of Agency § 4.01(1), at 304. In other words, if ratification exists a contract exists and the action is on the contract. We have specific statutes of limitations for actions based on contracts. *See* Iowa Code § 614.1(4) (covering unwritten contracts); *id.* § 614.1(5) (covering written contracts). Ordinarily the doctrine of laches does not apply within the statute of limitations unless there is a

showing of a special detriment to another. *Anita Valley, Inc. v. Bingley*, 279 N.W.2d 37, 41 (Iowa 1979). We will not infer prejudice from the mere passage of time. *Cullinan v. Cullinan*, 226 N.W.2d 33, 36 (Iowa 1975). Pertaining to contract actions, we have specifically stated "[l]aches may be a defense to a suit in equity, but not to an action at law" and that it is "[d]oubtless laches alone is not in itself a defense to an action on contract." *State Sav. Bank v. Miller*, 146 Iowa 83, 88, 124 N.W. 873, 874 (1910).

Corrado argues that he was prejudiced by the delay between the date LICA learned of the challenge to the signature and the date LICA brought action, because LICA waited to bring this action until John Corrado was near death and unable to provide his knowledge of the settlement agreement and his purported signature. The facts as certified do not contain any finding of prejudice because of John Corrado's death. Therefore, Corrado's claim regarding the doctrine of laches will not prevent us from answering the first question.

**C. Whether the Contract is Illegal.** The basis of this claim is that the settlement agreement is illegal because the contract allowed transactions categorically prohibited by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. The statement of facts does not mention ERISA or any facts that implicate ERISA. Accordingly, we will not consider Corrado's claim of ERISA when addressing the first question.

**IV. First Certified Question: Ratification.**

The first certified question asks:

> If a party receives a copy of an executed contract with that party's signature thereon, even where it is not known who applied the party's signature to the contract or whether the signature was authorized, and the party (a) does not

challenge the signature or otherwise object to the contract, and (b) accepts benefits and obligations under the contract for at least six years, then has the party ratified the contract and is the party, therefore, bound by the terms of the contract?

There are two types of ratification: (1) ratification by the principal of the signature of an agent, and (2) ratification by an individual who had the power to avoid the contract but affirmed the contract. Only ratification by the principal of an agent's signature is relevant here.[3]

We have said:

"Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."

*Abodeely*, 221 N.W.2d at 502 (quoting Restatement (Second) of Agency § 82, at 210 (1958)).

We have found ratification by the principal of an agent's signature in our prior caselaw. In *Ross v. Gordon*, we determined that Mrs. Gordon had ratified a contract when she witnessed the plaintiffs sign the contract, she did not challenge her signature, and she accepted payments and benefits under the contract. 252 Iowa 899, 904, 109 N.W.2d 208, 211 (1961). In *Ross*, we did not expressly decide whether

---

[3]The Eighth Circuit recognized the district court applied inapplicable Iowa caselaw regarding ratification because Corrado is not arguing that he can avoid a contract containing his signature, but rather he argues that he never signed the settlement agreement in the first place. *Life Investors Ins. Co. of Am. v. Fed. City Region, Inc.*, 687 F.3d 1117, 1122 (8th Cir. 2012).

"A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance."

*Nichols v. City of Evansdale*, 687 N.W.2d 562, 571 (Iowa 2004) (quoting Restatement (Second) of Contracts § 7, at 20 (1979)). A party may avoid a contract if there is a mutual mistake in formation. *Nichols*, 687 N.W.2d at 571. This situation does not apply because Corrado argues he never signed the settlement agreement.

there was a principal–agent relationship. However, we found the defendant's husband signed the contract on her behalf and impliedly acted on her behalf. *Id.* at 901, 904, 109 N.W.2d at 210–11 (stating in testimony that the defendant's husband handed the plaintiffs a contract and said "our name is already on it").

In *Mayrath Co. v. Helgeson*, we upheld a trial court's finding of ratification when a corporation had knowledge of an identified employee's actions of accepting a settlement check and the corporation accepted the benefits. 258 Iowa 543, 546, 551–52, 556–57, 139 N.W.2d 303, 305, 308, 311 (1966). In *In re Johnson's Estate*, we applied ratification when the cashier of a bank signed a contract without express authorization and the bank directors subsequently signed the contract. 210 Iowa 891, 902, 232 N.W. 282, 287–88 (1930). The lesson from these three cases is that ratification could only occur if the agent purported to act for the principal. *See* Restatement (Second) of Agency § 85(1), at 217 ("Ratification does not result from the affirmance of a transaction with a third person unless the one acting purported to be acting for the ratifier.").

In 2006, the American Law Institute published the Restatement (Third) of Agency. The Restatement (Third) of Agency maintained a similar definition for ratification. *Compare* Restatement (Third) of Agency § 4.01(1), at 304, *with* Restatement (Second) of Agency § 82, at 210. The Restatement (Third) of Agency also defined the elements of ratification of an act and when ratification does not occur. Specifically, the Restatement (Third) of Agency provides:

(2) A person ratifies an act by

(a) manifesting assent that the act shall affect the person's legal relations, or

(b) conduct that justifies a reasonable assumption that the person so consents.

(3) Ratification does not occur unless

(a) the act is ratifiable as stated in § 4.03,

(b) the person ratifying has capacity as stated in § 4.04,

(c) the ratification is timely as stated in § 4.05, and

(d) the ratification encompasses the act in its entirety as stated in § 4.07.

*Id.* § 4.01(2)–(3), at 304.

The issue raised by the first certified question is whether Corrado can ratify the contract when the evidence does not show who signed it on Corrado's behalf. *See Life Investors*, 687 F.3d at 1122 (finding Iowa law has not spoken on the issue of ratification when the signature on the contract was disputed). The Restatement (Second) of Agency, together with our caselaw, requires that an actor may only ratify an act if the actor purported to act as an agent. *See* Restatement (Third) of Agency § 4.03 cmt. *b,* at 321–22 (discussing the distinction between the purported to act requirement under the Restatement (Second) of Agency § 85(1) and the Restatement (Third) of Agency § 4.03); *see also Ross*, 252 Iowa at 904, 109 N.W.2d at 211 (implying the wife ratified the deed after finding the defendant's husband signed the contract on the wife's behalf).

In contrast, under the Restatement (Third) of Agency, "[a] person may ratify an act if the actor *acted* or purported to act as an agent on the person's behalf." Restatement (Third) of Agency § 4.03, at 321 (emphasis added). The reason for the change is set forth in the comments to section 4.03 of the Restatement (Third) of Agency. It provides:

> This [change] is consistent with the result reached in a number of relatively recent cases but inconsistent with the often-stated (but rarely directly dispositive) proposition that

> it is a requisite for ratification that the actor have purported to act as an agent.

*Id.* § 4.03 cmt. *b*, at 322.

One of the reasons for the "purported to act" requirement under the Restatement (Second) of Agency was that a person could not ratify a forgery. *Id.* § 4.03 cmt. *c*, at 323. As the Restatement (Third) of Agency emphasizes, the caselaw and statutes of the various states do not uniformly support this rule. *Id.* In Iowa, our legislature has taken the position a principal may ratify an unauthorized signature, including a forgery, when dealing with negotiable instruments. Iowa Code § 554.3403(1).

We conclude Iowa law should abandon the "purported to act" rule contained in the Restatement (Second) of Agency and our prior caselaw in favor of the rule contained in the Restatement (Third) of Agency, that an undisclosed principal may ratify an actor's unauthorized act. We reach this conclusion for the reasons set forth in comment *c* of section 4.03 of the Restatement (Third) of Agency and for the fact that our legislature has adopted this rule for negotiable instruments. We agree with the Restatement (Third) of Agency's position that our law should not treat contracts and negotiable instruments differently. A person should not be able to accept the benefits of a contract even if the signer's acts are unauthorized, but deny his or her obligations under the contract because the signer's acts are unauthorized.

Accordingly, we answer the first certified question in the affirmative.

### V. Second Certified Question: Estoppel.

The second certified question asks us to decide if a party is estopped from denying a signature while assuming the same facts exist

as in the first certified question. Our statute provides we may answer a certified question "which may be determinative of the cause . . . pending in the certifying court." Iowa Code § 684A.1. We have answered the first question in the affirmative. Because the questions are based on the same facts, the answer to the first question is "determinative of the cause . . . pending in the certifying court." *Id.* Thus, we decline to answer the second question. *See Campos v. Murray*, 134 P.3d 741, 745 (N.M. 2006) (stating that there was no need for the court to answer a second certified question because doing so was not determinative of any issue); *Bituminous Cas. Corp. v. Cowen Constr., Inc.*, 55 P.3d 1030, 1032 (Okla. 2002) (stating that the response to one certified question disposed of the case, and therefore the court declined to answer a second certified question).

### VI. Conclusion.

Following the rule as set forth in the Restatement (Third) of Agency section 4.03, we answer the first question in the affirmative. We decline to answer the second question because our answer to the first question is determinative of the outcome in the certifying court. Costs shall be equally divided between the parties. Iowa Code § 684A.5.

**CERTIFIED QUESTION ANSWERED.**