# IN THE SUPREME COURT OF IOWA

No. 19–0491

Submitted December 15, 2020—Filed March 12, 2021

**GREATAMERICA FINANCIAL SERVICES CORPORATION,**

Appellee,

vs.

**NATALYA RODIONOVA MEDICAL CARE, P.C.,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Lars G. Anderson, Judge.

Appellee seeks further review of court of appeals decision vacating the district court's grant of summary judgment on the issue that Appellant ratified a contract with Appellee and therefore is subject to all provisions of the contract. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Appel, J., delivered the opinion of the court, in which all justices join.

Larry J. Thorson of Ackley, Kopecky & Kingery, L.L.P., Cedar Rapids, for appellant.

Randall D. Armentrout and Leslie C. Behaunek of Nyemaster Goode, P.C., Des Moines, for appellee.

**APPEL, Justice.**

In this case, we consider whether receipt and installation of certain equipment subject to a finance agreement and payment of several installments over a seven-month period pursuant to the finance agreement amounts to ratification of the underlying contract, even though the lessee alleged that the signature on the financing agreement was fraudulently procured by a third-party seller of equipment. The finance company moved for and obtained summary judgment. The lessee appealed.

We transferred the case to the court of appeals. The court of appeals, over a dissent, determined that summary judgment was improperly granted because of disputed issues of material fact related to acceptance of the goods, ratification, and rejection of the goods. As a result, the court of appeals reversed the district court and remanded the case for further proceedings

For the reasons expressed below, we vacate the decision of the court of appeals and affirm the ruling of the district court granting summary judgment.

### I. Factual and Procedural History.

**A. Introduction.** Defendant professional corporation Natalya Rodionova Medical Care (NRMC) provides medical services in New York, New York. NRMC's sole shareholder is Dr. Natalya Rodionova. NRMC and a New York corporation, New York Digital Products, Inc. (NYDP), engaged in discussions regarding the provision of two Kyocera copiers and a Grandstream telephone system. On October 23, 2017, NRMC allegedly entered a financing agreement with an Iowa corporation, GreatAmerica Financial Services Corporation (GreatAmerica), for the leasing of telephone and copier products that would be supplied by NYDP. The financing

agreement contained a "hell or high water" provision. The hell or high water provision stated:

> NET AGREEMENT. THIS AGREEMENT IS NON-CANCELABLE FOR THE ENTIRE AGREEMENT TERM. YOU UNDERSTAND WE ARE PAYING FOR THE EQUIPMENT BASED ON YOUR UNCONDITIONAL ACCEPTANCE OF IT AND YOUR PROMISE TO PAY US UNDER THE TERMS OF THIS AGREEMENT, WITHOUT SET OFFS FOR ANY REASON EVEN IF THE EQUIPMENT DOES NOT WORK OR IS DAMAGED, EVEN IF IT IS NOT YOUR FAULT.

The finance agreement appeared to be signed by Rodionova, but NRMC asserts that the signature was a forgery.

Around October 23, NYDP sent the equipment to NRMC's office. On October 23, a GreatAmerica employee placed a telephone call to NRMC to determine the status of the transaction. According to GreatAmerica business records, in response to the question of whether the equipment was installed and working, an NRMC employee, Melissa Santiago, replied "Yes."

Under the finance agreement between GreatAmerica and NRMC, NRMC was to pay GreatAmerica sixty-three monthly installments of $999 per month. GreatAmerica sent NRMC its first invoice on October 30. The GreatAmerica invoice bears the identification header "GreatAmerica Financial Services" and identifies the invoice as presented pursuant to "Agreement 003-1296204-000." The GreatAmerica invoice declared that "We appreciate your business! We are glad you chose GreatAmerica Financial Services Corporation." In addition, the invoice detail identified the equipment related to the invoice as "2-Kyocera TASKalfa 4002i Copiers & Grandstream Phone Sys." The reverse side of the invoice asked the lessor to provide a "New Equipment Location" if applicable. Further, under additional information, the reverse side of the invoice referred to a

potential right to purchase the equipment at the end of the term "under your agreement."

Pursuant to the finance agreement, GreatAmerica sent monthly invoices to NRMC. NRMC made its first payment by check dated November 4, 2017 for $1157.17.[1] The memo line of the NRMC check contained the handwritten notation "office internet phone/fax etc." The NRMC check also had a handwritten notation with the invoice number and the agreement number provided in the GreatAmerica invoice. Four additional invoices, totaling six-months worth of installments, were paid by NRMC via telephone calls authorizing debits to NRMC's bank account.

On May 9, 2018, an employee of GreatAmerica emailed Rodionova and asked for an update on payment of an overdue invoice. On May 17, Rodionova sent a response to GreatAmerica attempting to cancel the finance agreement.

In the reply email, Rodionova stated, in relevant part, that "Tony Barro and New York Digital betrayed me and broke [their] responsibility to me." Rodionova asserted that "[m]y services got interrupted, in both offices, because he (they) did not pay their bills." As a result, Rodionova stated that she "moved back with Verizon and Cable vision." Because of the situation, Rodionova told GreatAmerica, "You can pick up your phones. I can not use them. If you want, and give me a fair price on used printer/faxes, I will purchase them from your company."

On May 21, Rodionova herself authorized payment of two invoices to GreatAmerica. Thereafter, however, NRMC discontinued further payments.

---

[1]This first-month payment included the $999 installment, applicable taxes, and a one-time documentation fee.

**B. Proceedings in District Court.** GreatAmerica sued NRMC for breach of contract and unjust enrichment. NRMC filed an answer denying the claims and affirmatively alleging that "the representative from New York Digital Products, Inc. fraudulently induced the Defendant to enter into a contract that was financed by GreatAmerica Financial Services Corporation."

GreatAmerica moved for summary judgment. GreatAmerica asserted that even if the signature on the finance agreement, allegedly on behalf of NRMC, was a forgery, it was still undisputed that the equipment subject to the finance agreement was installed and working on October 23, 2017, and that thereafter, NRMC made seven of sixty-three payments pursuant to the finance agreement in response to invoices sent to NRMC by GreatAmerica. GreatAmerica further claimed it was undisputed that on May 17, 2018, Rodionova attempted to cancel the contract, admitted that she had been using the telephone services but her services were interrupted because of a dispute with the vendor, admitted use of the copiers, and offered to purchase the used equipment. Finally, GreatAmerica stated it was undisputed that NRMC made no further payments under the finance agreement. From these facts, GreatAmerica claimed NRMC ratified the finance agreement and is bound by its terms, including the hell or high water provision. GreatAmerica emphasized that the hell or high water provision was important to the finance industry, and while it protected the financing party, it did not prohibit the lessee from pursuing an action against the vendor, in this case NYDP.

NRMC admitted the payments made to GreatAmerica. NRMC, however, provided an affidavit from Rodionova alleging that she did not sign the finance agreement. NRMC noted that the GreatAmerica business record allegedly dated October 23, 2017, did not, in fact, have the year on

the document and did not indicate that the equipment was working. With respect to the May 17, 2018 email, NRMC asserted that Rodionova herself is not a defendant, so her use or nonuse of the equipment was not an issue. From the summary judgment record, NRMC argued that NRMC could not be bound by a fraudulently signed finance agreement.

The district court granted GreatAmerica's motion for summary judgment. The district court began by noting that hell or high water provisions are enforceable in Iowa upon the acceptance of goods. *GreatAm. Leasing Corp. v. Star Photo Lab, Inc.*, 672 N.W.2d 502, 505 (Iowa Ct. App. 2003). The district court found that the goods in this case were accepted by NRMC based on the substance of the phone call verification on October 23, 2017, but also by keeping the goods for seven months and making payment thereon without any attempt to reject the goods. The district court recognized that a contract containing a hell or high water provision can be attacked as invalid on grounds of fraud. But in this case, the district court reasoned, NRMC ratified the contract through its conduct regardless of who signed the underlying contract. *Life Invs. Ins. Co. of Am. v. Est. of Corrado*, 838 N.W.2d 640, 647 (Iowa 2013).

**C. Decision of Court of Appeals.** NRMC appealed. In a divided opinion, the court of appeals reversed. The court of appeals found a genuine issue of material fact because Rodionova claimed to have never seen a copy of the contract until litigation commenced. The court of appeals also said that while a jury could find that the contract was ratified, it was a question of fact required to be submitted to the factfinder rather than a question of law to be determined on summary judgment. In particular, the court of appeals reasoned that while a party might be bound by an unknown contract if the party failed to reasonably investigate, whether the duty to investigate was triggered in this case was

a matter of fact. The court of appeals also found that there was a factual issue on the question of acceptance. The court of appeals noted that Rodionova in an affidavit asserted that "I never got any use out of the equipment" and that Melissa Santiago was "not authorized to accept delivery of equipment or make any determination as to whether or not payment is due and owing."

The dissent would have affirmed the district court's grant of summary judgment. According to the dissent, after NRMC conceded the existence of some contract in its affirmative defense and made seven payments to GreatAmerica for the equipment, the dissent reasoned that such action amounted to ratification. Further, while the dissent recognized that Rodionova may not have known the precise terms of the finance agreement, the GreatAmerica billing documents as a matter of law put a reasonable company on notice of the existence of the contract. With respect to the hell or high water provision in the GreatAmerica finance agreement, the dissent found that the term applied as the agreement was accepted or ratified by NRMC. The dissent noted that GreatAmerica October 23, 2017 documentation showed that the equipment was in working condition and that no contrary affidavit was provided by NRMC. Finally, the dissent noted that no rejection of the equipment occurred until May 17, 2018, too late after the payment of seven invoices to defeat ratification. For the above reasons, the dissent asserted that the district court properly granted summary judgment in this matter.

## II. Standard of Review.

We review a district court's ruling on a motion for summary judgment for correction of errors at law. *See Terry v. Dorothy*, 950 N.W.2d 246, 249 (Iowa 2020). The legal standard for a proper ruling on summary judgment is when there is no genuine issue of material fact

on the record, and "the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "Where reasonable minds can differ on how an issue should be resolved, a fact question has been generated, and summary judgment should not be granted." *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 73 (Iowa 2011).

### III. Discussion.

**A. Positions of the Parties**. On appeal, NRMC contends that the district court erred in finding that NRMC received a benefit from having the equipment on the premises and that its rejection of the equipment was not timely. NRMC asserted that there was no evidence in the summary judgment record that the equipment was ever installed and working. Further, NRMC claims that the period of time from the October 23, 2017 start of the agreement to her May 17, 2018 nonpayment was "very short" and did not arise to ratification of an agreement that she did not sign. With respect to the payments made to GreatAmerica, NRMC asserted that Rodionova "did not consider [those] payments to GreatAmerica to be NRMC's responsibility." NRMC asserted that although payments were made on four occasions by NRMC, Rodionova expected the payments to be made by Tony Barro, the person who she asserted was responsible for the fraudulent finance agreement.

NRMC emphasizes that she did not sign the finance agreement and therefore cannot be bound to the hell or high water provision of the finance agreement. Further, without a copy of the finance agreement, NRMC asserts that Rodionova would not have known what equipment was subject to the lease and subject to rejection.

In sum, NRMC claims that there are factual disputes regarding acceptance or ratification and that summary judgment was improperly granted.

GreatAmerica views the record differently.  GreatAmerica points out that its October 23, 2017 telephone verification record indicates that Melissa Santiago responded "Yes" when a GreatAmerica employee asked "Is the equipment installed and working?"  GreatAmerica emphasizes the detail on its invoices sent to NRMC including the contract number, a description of the equipment, and the characterization of underlying documentation as "your agreement."  GreatAmerica notes that seven monthly invoices were honored by NRMC prior to NRMC's default under the contract.  GreatAmerica points out that the last two invoices were honored by Rodionova herself on May 21, 2018.  GreatAmerica argues that even if the finance agreement signature was not Rodionova's, the acceptance of the equipment and the payment of invoices by NRMC amounts to a ratification.

**B.  Merits.**

1. *Ratification.*  Based on the applicable case law, we agree with GreatAmerica that NRMC ratified the finance agreement through its actions and inactions.  As a matter of law, the contract was ratified by NRMC despite any allegation of forgery.

The legal support for our conclusion derives in part from *Life Investors Insurance Co. of America v. Estate of Corrado*, where we approved the Restatement (Third) of Agency's definition of ratification.  838 N.W.2d at 647.  "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority."  Restatement (Third) of Agency § 4.01(1), at 304 (Am. L. Inst. 2006).  To ratify an act, the ratifier must either "manifest[] assent that the act shall affect the person's legal relations, or [engage in] conduct that justifies a reasonable assumption that the person so consents."  *Id.* § 4.01(2)(a), at 304.  A "knowing acceptance of the benefit

of a transaction ratifies the act of entering into the transaction." *Id.* § 4.01 cmt. *d*, at 308; *see also Stathis v. Geldermann, Inc.*, 692 N.E.2d 798, 808 (Ill. App. Ct. 1998) ("Ratification occurs when the principal learns of an unauthorized transaction, then retains the benefits of the transaction or takes a position inconsistent with nonaffirmation."). As a generality, manifestation of assent, and whether certain conduct is sufficient to indicate consent, are questions of fact. *See, e.g.,* Restatement (Third) of Agency § 1.03, at 56–63; § 4.01 cmts. *d*, at 308, *f*, at 309, *g*, at 309–10..

The Restatement (Third) of Agency allows an undisclosed principal to ratify an unauthorized actor's act, therefore permitting ratification even for forged documents. *See id.* § 4.03, at 321–23. The rationale for ratification even in cases of alleged forgery is "[a] person should not be able to accept the benefits of a contract even if the signer's acts are unauthorized, but deny his or her obligations under the contract because the signer's acts are unauthorized." *Life Invs. Ins. Co. of Am.*, 838 N.W.2d at 647.

The Restatement (Third) of Agency further provides that "[a] person is not bound by a ratification made without knowledge of material facts involved in the original act when the person was unaware of such lack of knowledge." Restatement (Third) of Agency § 4.06, at 336. And a comment to the section clarifies that

> [r]atification is the consequence of a choice freely made by the principal. The principal may choose to ratify the action of an agent or other actor without knowing material facts. A factfinder may conclude that a principal has made such a choice when the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation.

*Id.* § 4.06 cmt. *d*, at 337–38; *see also Stathis*, 692 N.E.2d at 808 ("For ratification to occur, the principal must, with full knowledge of the act,

manifest an intent to abide and be bound by the transaction. Ratification may be inferred from surrounding circumstances, including long-term acquiescence, after notice, to the benefits of an allegedly unauthorized transaction." (citation omitted)).

Based on this principle, fraud, forgery, misunderstanding, and mistake could play a role in whether a contract is effectively accepted and ratified. In many cases involving those kinds of facts, the question should be submitted to the factfinder. Yet, even when there is a disputed fact regarding actual knowledge of a contract, courts have deemed contracts ratified as a matter of law based on the surrounding circumstances. *See, e.g.*, *De Lage Landen Fin. Servs. v. St. Bernard's Episcopal Church*, 2012 WL 489149, \*3 (N.J. Super. Ct. App. Div. 2012) (per curiam) ("[T]he equipment was delivered; it was not concealed from members of the vestry or other church officials; and the church used the machine and, in fact, paid the lease charges for some twenty-six months. During that time, members of the vestry and other church officials must have been aware that the church had use of a copier and that a monthly charge was being paid for it under a contract. Having accepted the benefits of the contract entered into by its agent, even if unauthorized at its inception, the church could not repudiate the contract halfway through its term.").

Rodionova claimed that she did not sign the contract and in fact never saw the contract until the initiation of this litigation. Rodionova further alleged that her employee, who confirmed with GreatAmerica receipt of the goods, that the goods were installed, and that they were in proper order, was not authorized to accept delivery or make a determination about the fitness of the goods. Assuming all of this true for the purposes of summary judgment, the contract was still ratified by NRMC.

Rodionova's affidavit confirmed that the goods were in fact delivered. For the purposes of this litigation, we do not need to know whether the goods were ever installed or in proper order. Contract law principles would have required Rodionova to return the nonconforming or defective goods within a reasonable time period, and Rodionova did not attempt to return the goods until seven months later. *See* Iowa Code § 554.13509 (2017) ("Rejection of goods is ineffective unless it is within a reasonable time after tender or delivery . . . and the lessee seasonably notifies the lessor."); *see also In re Rafter Seven Ranches L.P.*, 546 F.3d 1194, 1202 (10th Cir. 2008) (holding six weeks was an unreasonable period to wait before attempting rejection and citing cases holding under certain circumstances rejection after a period of as little as nineteen days is unreasonable); *GreatAm. Leasing Corp. v. Davis-Lynch, Inc.*, 2011 WL 167248, at *5 (N.D. Iowa Jan. 19, 2011) (holding that rejection of goods is typically not effective if the party makes installment payments on the contract for a period of several months). Instead, NRMC accepted the goods in the sense that it possessed them for seven months and made seven monthly payments under the finance agreement. *See* Iowa Code § 554.13515(1) ("[Acceptance occurs when] the lessee has had a reasonable opportunity to inspect the goods and (*a*) the lessee signifies or acts . . . in a manner that signifies to the lessor . . . that the goods are conforming or that the lessee will take or retain them in spite of their nonconformity; or (*b*) the lessee fails to make an effective rejection of the goods."); *see also Woodall v. Beauchamp*, 236 S.E.2d 529, 545 (Ga. Ct. App. 1977) ("[I]f a party who is entitled to rescind a contract because of fraud or false representation, when he has full knowledge of all the material circumstances of the case freely and advisedly does anything which amounts to the recognition of the transaction, or acts in a manner inconsistent with its repudiation, it

amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable even in equity. It is incumbent upon a party who attempts to rescind a contract for fraud to repudiate it promptly on discovery of the fraud. . . . [If no attempt is made, the party] will be held to have waived any objection, and to be conclusively bound by the contract as if no fraud or mistake had occurred." (citations omitted)).

NRMC thus ratified the contract through acceptance of the benefit of the contract (possession of the copier and phone systems) and making seven installment payments. Effectively NRMC conducted business as if it had a contract with GreatAmerica for seven months and then attempted to reject the goods and cancel the contract after a third-party dispute with NYDP.

We recognize that questions regarding acceptance, rejection, and ratification often raise factual issues that preclude summary judgment. But here, on the undisputed facts, NRMC had possession of the equipment and paid invoices over a seven-month period. NRMC received invoices with detailed documentation of "your agreement," a description of the precise equipment subject to the agreement, and a specific contract identification number. If NRMC wished to reject the goods, or did not wish to be a party to contract with GreatAmerica, NRMC could have done so in a reasonable time. But as a matter of law, the failure to reject goods over a seven-month period and the payment of periodic invoices amounts to a ratification that cannot be unwound by a tardy effort to reject the goods.

2. *Hell or High Water Provision.* Because the GreatAmerica finance agreement was alleged to be fraudulently obtained, NRMC claims that the hell or high water provision of the finance agreement cannot be enforced. "In general, a hell or high water clause makes a lessee's obligation under a finance lease irrevocable upon acceptance of the goods, despite what

happens to the goods afterwards." *GreatAm. Leasing Corp.*, 672 N.W.2d at 504. Hell or high water provisions are valid in Iowa and may be specifically expressed in a contract or attach by default to all finance leases under the Uniform Commercial Code. *See* Iowa Code § 554.13407.

The hell or high water provision in the GreatAmerica finance agreement take effect upon acceptance of the goods. As indicated above, NRMC accepted the goods by taking possession for seven months before making any attempt to reject the goods. Upon acceptance, NRMC was obligated to pay under the terms of the agreement no matter what happened to the goods after acceptance.

NRMC alleges that it did not receive a copy of the contract until litigation commenced and therefore is not subject to the specific terms of the contract. The argument is unavailing because the seven-month period of possession and payments under the contract would have put NRMC on notice that a contract existed and NRMC should have investigated the provisions of the contract prior to ratification. *See Advance Elevator Co. v. Four State Supply Co.*, 572 N.W.2d 186, 188 (Iowa Ct. App. 1997) ("[A] party is charged with notice of the terms and conditions of a contract if the party is able or has had the opportunity to read the agreement."); *see also Peak v. Adams*, 799 N.W.2d 535, 543 (Iowa 2011) ("It is well-settled that failure to read a contract before signing it will not invalidate the contract." (quoting *Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993))); *Morgan v. Am. Fam. Mut. Ins.*, 534 N.W.2d 92, 99 (Iowa 1995) (holding that an insurance contract was formed with a new contract term despite the policy holder never actually reading the new contract after the new policy was mailed to the policy holder and the policy holder continued to make premium payments), *overruled on other grounds by Hamm v. Allied Mut. Ins.*, 612 N.W.2d 775 (Iowa 2000). Billing statements sent to NRMC, while they did

not contain the full contract terms, made reference to an agreement number that NRMC could have investigated. And, any reasonable business would have investigated in such a scenario before making the number of payments that NRMC made. Therefore, even if NRMC did not have actual knowledge of the specific hell or high water provision, NRMC accepted the contract terms through its ratification.

## IV. Conclusion.

For these reasons, we vacate the decision of the court of appeals, and affirm the ruling of the district court granting summary judgment to GreatAmerica.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**