# IN THE COURT OF APPEALS OF IOWA

No. 18-1932
Filed February 19, 2020


**GREATAMERICA FINANCIAL SERVICES CORPORATION,**
Plaintiff-Appellee,

**vs.**

**PERSONAL TOUCH MEDICAL MANAGEMENT, INC. and MARISOL APONTE,**
Defendants-Appellants.
_____


Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.


The defendants appeal an adverse summary judgment ruling in this breach-of-contract action. **REVERSED AND REMANDED.**


Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellants.

Randall D. Armentrout and Leslie C. Behaunek of Nyemaster Goode, P.C., Des Moines, for appellee.


Heard by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

The defendants, Personal Touch Medical Management (PTMM) and Marisol Aponte (Aponte), appeal from an adverse summary judgment ruling in this breach-of-contract action brought by GreatAmerica Financial Services Corporation (GreatAmerica). The defendants assert the district court erred in granting summary judgment as there remain genuine issues of material fact as to whether there is a valid contract between the parties. They also challenge the court's award of attorney fees. Because GreatAmerica has not proved a breach of contract as a matter of law, we reverse and remand for further proceedings.

**I. Background Facts and Proceedings.**

PTMM is a New York management services organization that offers a number of administrative services to medical professionals, including the medical practice of Mujibur R. Majumder, MD, P.C. of Bronx, New York.

On May 21, 2015, Aponte, the chief executive officer of PTMM, signed a software and services term sheet for PTMM offered by a vendor, InSync Healthcare Solutions, LLC (InSync). The software was to be used to assist with practice management ("PM") and electronic medical records ("EMR") for PTMM's clients, including Mujibur R. Majumder, MD, P.C. The term sheet signed by Aponte provided:

|  | InSync PM+EMR License Purchase |
| --- | --- |
| License term | License purchase |
| Total Upfront Costs | $0 |
| Monthly Payment/Provider | $130 |
| Monthly Payment (for All Licensed Providers) | $650 |
| Number of Monthly Payments | 60 |
| 3rd Party Fees | $75 |

Roland Therriault, the vice president of sales, signed the term sheet on behalf of InSync on May 27, 2015.

GreatAmerica is an Iowa corporation that provides financing to companies that desire to acquire business equipment or software for commercial use. Two GreatAmerica documents dated June 6, 2015—a "Software Finance Agreement" and a "Prefund Request and Authorization"—for customer "Mujibur R Majumder, MD, P.C." and vendor "InSync Healthcare Solutions" show a signature in the area entitled "customer's authorized signature" next to the printed customer "name & title" of "Mujibur Majumder."

The GreatAmerica software finance agreement provides for sixty months of monthly payments of $649.97. It states in bold and capital letters, "THIS AGREEMENT IS NON-CANCELABLE AND IRREVOCABLE. IT CANNOT BE TERMINATED."

The prefund request contains the following language:

> By your execution of this Prefund Request and Authorization (the "Prefund Request"), you hereby request that GreatAmerica . . . pay to your Vendor all, or a substantial portion (as indicated by your Vendor), of the amount your Vendor has invoiced us (or you) for the

items being leased and/or financed under the Agreement (the "Financed Items"), notwithstanding that you have not received some or all of the Financed Items. . . . To induce us to pay the Advance Funding Amount to your Vendor immediately, **YOU AGREE THAT YOUR OBLIGATION TO MAKE THE PAYMENTS CALLED FOR UNDER THE AGREEMENT HEREBY COMMENCES IMMEDIATELY. YOU FURTHER AGREE THAT YOUR OBLIGATION TO MAKE THE PAYMENTS CALLED FOR UNDER THE AGREEMENT IS UNCONDITIONAL AND THAT YOU WILL TIMELY PERFORM ALL SUCH OBLIGATIONS WITHOUT ANY CLAIM OF SETOFF, EVEN IF: (A) YOU DO NOT RECEIVE SOME OR ALL OF THE FINANCED ITEMS; (B) THE FINANCED ITEMS ARE RECEIVED BY YOU, BUT NOT ON A TIMELY BASIS; AND/OR (C) THE FINANCED ITEMS DO NOT, AT THE TIME OF YOUR RECEIPT OR THEREAFTER, OPERATE PROPERLY, ARE INEFFECTIVE, OR THERE IS ANY OTHER NONCONFORMANCE IN ANY SUCH FINANCED ITEM**. . . .

On November 23, 2016, GreatAmerica filed suit against Mujibur R. Majumder, MD, P.C. and Mujibur R. Majumder (hereinafter collectively MRM), alleging breach of the software finance agreement, breach of guaranty, and unjust enrichment. MRM answered, denying the allegations.

In April 2017, GreatAmerica moved to amend the petition to add a fraudulent-misrepresentation claim against PTMM and Aponte based upon an affidavit provided by Aponte and produced by MRM. In the affidavit Aponte states:

> (4) I am the Chief Executive Officer of Personal Touch Medical Management, Inc.
> (5) I have been so engaged for [seven] years.
> (6) In the course of my duties as CEO of Personal Touch Medical Management, Inc. I have come to know Mujibur R. Majumder, M.D.
> (7) Mujibur R. M[a]jumder, M.D. is not, either personally or in conjunction with Mujibur R. Majumder, M.D. P.C. an owner, stockholder, employee, subject to or affiliated with the management of Personal Touch Medical Management Inc. in any way.
> (8) Dr. Majumder is a contracted service provider of Personal Touch Medical Management, which does not have any authority over him personally or his professional corporation in any way.
> (9) I had no authority with nor was I granted any authority or permission from Dr. Majumder or anyone affiliated with him

personally or through his Professional Corporation to act on his behalf, sign his name, contract, commit or bind him in any way, either personally or corporately.

(10) Dr. Majumder did not participate in any way in the creation or course of any business relationship between Personal Touch Medical Management, Inc. and InSync Healthcare Solutions, LLC.

(11) Dr. Majumder did not participate in any way in the creation or course of any business relationship between Personal Touch Medical Management, Inc. and GreatAmerica Financial Services Corporation.

(12) To the best of my knowledge, Dr. Majumder did not participate in any way in the creation or course of any business relationship between GreatAmerica Financial Services Corporation and InSync Healthcare Solutions, LLC.

(13) Dr. Majumder did not direct, solicit or otherwise participate in the preparation of the documents referred to in the Plaintiff's lawsuit.

(14) The signatures that the Plaintiff purports to be Dr. Majumder's are not his. I signed them as I described in detail in my letter dated October 28, 2016,[1] a copy of which is attached and

---

[1] The October 28, 2016 letter provides:

Dear Ms. Zirtzman,

First and foremost, thank you for the extension granted to us late last week. This has afforded us the ability to further research the relationship between InSync[ ], GreatAmerica, Dr. Majumder and Personal Touch Medical Management.

We're an organization that takes our debts, and our monthly obligations seriously.

In reviewing the situation with InSync[ ]/GreatAmerica, many questions and concerns have arisen.

First and foremost, at no time did Dr. Majumder authorize the purchase or lease of any software from InSync[ ]. Further, at no time did Dr. Majumder sign or otherwise authorize any agreement with GreatAmerica to finance such a purchase.

Let me give you the background to this situation.

[PTMM] is a management services organization that offers a number of administrative services to medical professionals. Dr. Majumder is a client of ours. We decided to contract with InSync for Practice Management software and an Electronic Health Record System, for the benefit of a number of our clients. The plan we wished to obtain was a monthly subscription plan, not a lease or purchase.

I have contracts in front of me as I write this letter. It appears that I signed the original InSync[ ] PRACTICE MANAGEMENT contract on 05/27/2015. Roland Therriault, VP Sales signed on InSync[ ]'s behalf. I then signed another, similar PM contract with modifications on 11/13/2015. It looks like there were dollar adjustments when compared to the original PM contract.

incorporated by reference herein. I did not have his permission to do so.

(15) Despite repeatedly advising GreatAmerica of the above facts, they have continued to pursue and harass Dr. Majumder in this matter.

---

I am astounded and quite concerned that the contract documents that I have in my possession contain only a brief description of the software modules desired, with costs. There are NO general terms and conditions, so that these documents standing alone, do not represent legally enforceable contracts. Looking into this further, it seems the "general terms and conditions" or the primary contract is contained in an End User License Agreement that is required at every login.

I hardly need to say it, but this is highly unusual, and in fact quite irregular, in business software contracts. I have never before encountered this situation in over three decades of business experience. There are so many problems with this approach, I hardly know where to begin. Let me confine myself to some of the more obvious and troubling aspects.

First, I have no copy of the agreement with my signature on it. Second, this approach allows the software company to change the terms and conditions of the contract at any time, without notice or adequate opportunity for the user to review. A busy practitioner is not going to review a contract every time he/she logs in. And finally, the practitioner agreeing to the contract may have no authority to do so, as in this case.

If, in fact, InSync has a valid hard copy contract with my signature on it, please have them send a copy to me for my review.

It is at this point that GreatAmerica becomes involved, much to my surprise. In the beginning of June 2015 InSync[ ] sent a trainer to the PTMM location to do on-site training for the new InSync[ ] EMR activation/install. At the completion of the training, the trainer (I think it was a Ms. Laura Jurgens) passed a new, never previously discussed form to me, saying that InSync[ ] needed to know the physician who would be using the EMR. At no time was I informed that this was a contract for financing a purchase of the software, a purchase that I never desired or requested; at no time was GreatAmerica mentioned; at no time did I agree to such a transaction. I did write in the name of Dr. Majumder on the form, thinking it was informational only.

The form has tiny print and confusing language. My impression is, this was a "sign here" tactic in a fast paced medical environment with ample distraction to ensure lack of proper review. That the contract hand-off was done at the completion of training as opposed to at the beginning further illustrates the "bait and switch" aspects of the situation.

It appears to me that InSync[ ] and GreatAmerica are co-conspirators in a highly suspect and predatory scheme to take advantage of medical professionals who are not well versed in business practices and the law. Medical professionals, in fact, like my clients, who depend on me to protect them from abusive practices such as these.

The court allowed the amendment. Aponte and PTMM filed their answer generally denying the allegations and including a number of affirmative defenses, including that the alleged contract is void for lack of acceptance or meeting of the minds and that GreatAmerica engaged in unfair and deceptive trade practices.

On August 21, 2017, the MRM defendants filed a motion for summary judgment.

On August 28, GreatAmerica dismissed its claims against the MRM defendants without prejudice.

Aponte and PTMM filed an amended answer to a paragraph of the amended petition ("After [contract] default, Aponte alleged that she signed Majumder's name on the Agreement without his permission."), which includes the following statement:

> Denied as phrased. As should be clear from the April 3, 2017 Affidavit of Marisol Aponte, which incorporates her October 28, 2016 letter to Rita Zirtsman of GreatAmerica Financial Services Corporation, Aponte did not have any authority to bind Dr. M[a]jumder or his professional corporation to any contract and Aponte did not understand she was signing a contract or agreement, but that the person she believed at the time to be a trainer for the InSync Trainer asked her to write in the name of the doctor who would be using the software and Aponte did not understand she was signing any contract agreement on behalf of Dr. M[a]jumder, herself, the corporation she represents, or anyone else.

The amended answer also added an affirmative defense that Aponte "was induced by fraudulent misrepresentations of [GreatAmerica's] representative when she wrote 'Dr. M[a]jumder' on certain documents at the request of [GreatAmerica's] representative or agent." A counterclaim was also included. Further amendments to the pleadings were offered and allowed.

On June 25, 2018, GreatAmerica filed a motion for summary judgment on its amended claims of breach of contract by PTMM, breach of guaranty by Aponte, and fraudulent misrepresentation concerning both PTMM and Aponte. The defendants resisted. In reply to the resistance, GreatAmerica asserted, "The court should reform the [software financing] agreement to be in the names of PTMM and Aponte to accurately reflect the true intent of the parties."

The district court proceeded to enter its ruling without hearing. With respect to the fraud claim, the court found factual questions remained including Aponte's intent at the time of forming the contract and whether GreatAmerica justifiably relied on the signature of MRM. With respect to Aponte's intent, the district court wrote:

> It is not for the court to assess at this juncture what facts appear more plausible, or what Ms. Aponte knew or intended. The court believes that there are two possible inferences to be drawn from the facts on this issue and the Court is obligated to deny summary judgment to the Plaintiff on that basis.

As for the issue of justifiable reliance, the court wrote,

> It is not clear to the court what exactly Dr. Majumder was told, or what he verified if they did in fact talk to him on the phone. There was an inconsistency in the address for the doctor and that fact was sufficiently obvious that GreatAmerica should have fully verified that they had approval of the contract. There remains a fact question as to whether they did so.

The court then considered the breach-of-contract claim noting, "[T]he question before the court is whether the defendants can be held liable for a breached contract and guaranty that were signed by them but not in their name and on what conditions." The court answered that question in the affirmative, finding there was a contract, a breach of contract, and a breach of guaranty.

Thereafter, GreatAmerica dismissed its fraud claim without prejudice. The court awarded damages to GreatAmerica in the amount of $32,314.22, and—over defendants' objection—awarded attorney fees in the amount of $62,543.00.

Defendants appeal.

## II. Scope and Standard of Review.

We review the grant of summary judgment in favor of GreatAmerica for correction of errors at law. *See C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 73 (Iowa 2011). Summary judgment is proper when the record reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). The nonmoving party—the defendants—are entitled to have the evidence viewed in the light most favorable to its position. *See Luana Sav. Bank v. Pro-Build Holdings, Inc.*, 856 N.W.2d 892, 895 (Iowa 2014). "Where reasonable minds can differ on how an issue should be resolved, a fact question has been generated, and summary judgment should not be granted." *Wolfe*, 795 N.W.2d at 73. "[O]ur review is limited to whether a genuine issue of material fact exists and whether the district court applied the correct law." *Id.*

## III. Discussion.

On appeal, the defendants assert the court erred in finding no genuine issue of material fact existed with respect to the breach-of-contract and breach-of-guaranty claims. We agree.

GreatAmerica hangs its hat on this exchange in Aponte's deposition when asked what her intent was by ordering the software on May 21, 2015:

Q. [W]as it your intent at that time to enter into some sort of a new contract to get electronic medical records? A: Yes.

Q: Was the intent to do it in the name of Personal Touch Medical Management? A. Yes.

We note, however, that Aponte was ordering software from InSync—not GreatAmerica. GreatAmerica is not identified by name anywhere on the term sheet between PTMM and InSync. Moreover, the contracts the court found to be binding are the June 6, 2015, GreatAmerica finance agreement and prefund request. Despite its express ruling that a factual issue remained as "what Ms. Aponte knew or intended," the court proceeded to conclude Aponte intended to enter a contract:

> Factually, even Ms. Aponte's version of the facts seems to be that she entered into a contract for software that PTMM wanted to use and that she merely noted Dr. Majumder as the provider who would be served with the software. *In that case, it was always her intent that PTMM be bound.* The document was labeled "Agreement" and the guaranty instructs the signer to only sign if it was a personal guarantee of the obligations under the prefund authorization. Defendant argues that Ms. Aponte did not understand the nature of the contract and had no intention to bind anyone to it.
> . . . .
> . . . Ms. Aponte had every opportunity to know what she was signing. Regardless of whose name she signed, she admits that she signed a contract, she did so with the opportunity to read it before she signed it, and doing so, she agreed to all the terms and conditions contained in that contract.
> Further Ms. Aponte accepted the software, used it for at least nine months and made payments on it. It was Ms. Aponte and PTMM who used the software and not Dr. Majumder's practice or anyone else. Where an individual accepts the benefits of a contract she cannot avoid the obligations. Further, the payments that were made on the contract were signed by Ms. Aponte and written as checks from both her and from PTMM, indicating participation in the contract. Based upon the representations of Ms. Aponte in the contract and the payments that GreatAmerica received for approximately nine months, the court finds that a contract does exist between GreatAmerica and Ms. Aponte.

(Emphasis added) (citation omitted).

The summary judgment record is not undisputed on the issue of Aponte's intent. In her deposition, Aponte testified she often wrote Dr. Majumder's name for purposes of billing, credentialing, and scheduling patients. With respect to June 6, 2015, she "wasn't aware [she] was signing any documents. [She] was just writing his name as the medical provider that was going to be using the software."

With respect to paying for the software, Aponte testified:

> A. At this time [June 22, 2015] I was still looking at the invoice as InSync EMR system, and I did not—at this time did not know what GreatAmerica had to do with Insync, but I just—(Interruption by court reporter.)
> A. —I just viewed it as an invoice from InSync.
> Q. Even though it says at the top GreatAmerica Financial Services? A. Yes, because the description is InSync EMR, and again, I was not aware that I was in a lease contract with GreatAmerica.
> Q. And again, the June 6 agreements do state GreatAmerica at the top of those, Exhibits 2 and 3? A. Yes, I see it.
> Q. So were you concerned at all that you received an invoice from GreatAmerica in June of 2015 if you didn't think you were dealing with a company from Iowa? A. No. I didn't think I was dealing with anyone from GreatAmerica.
> Q. In fact, you paid the invoices? A. Yes. I paid it because we were using InSync and InSync was what I was given as a description in the invoice, and that's what I was aware I was paying.

Because GreatAmerica has not proved a breach of contract as a matter of law, we reverse and remand for further proceedings. In addition, because summary judgment was improperly granted, we vacate the award of attorney fees.

**REVERSED AND REMANDED.**

May, J., concurs specially; Greer, J., concurs in part and dissents in part.

**MAY, Judge** (concurring specially).

I believe we should reverse for three reasons. First, we generally enforce written contracts as they are written. Iowa R. App. P. 6.904(3)(n); *see Smith v. Stowell*, 125 N.W.2d 795, 799 (Iowa 1964) (noting our reluctance to "remake" contracts). The contract at issue is GreatAmerica's "Software Finance Agreement" (Agreement). As Aponte and PTMM correctly argue, "The plain language of the [Agreement] did not" mention Aponte or PTMM. Its words placed no obligation on Aponte or PTMM. So, as it is written, the Agreement cannot support the judgment against Aponte and PTMM.

Second, at this summary-judgment stage, I do not think we should reform the Agreement to place obligations on Aponte and PTMM. *See* Iowa R. App. P. 6.904(4)(k) (defining the limited circumstances under which reformation can be granted); *see also Kansas v. Nebraska*, 135 S. Ct. 1042, 1061 (2015) (noting "courts should hesitate, and then hesitate some more, before modifying a contract, even to remove an inadvertent flaw"). Reformation could be available if (1) the written contract—the Agreement—failed to reflect the parties' real agreement because of (2) "mistake by one party and fraud or inequitable conduct by the other." *Gouge v. McNamara*, 586 N.W.2d 710, 713 (Iowa Ct. App. 1998). As the majority correctly observes, however, there is record evidence Aponte only intended to enter a contract with InSync—not with GreatAmerica. Moreover, the record is mixed as to whether Aponte tried to deceive GreatAmerica—and, therefore, engaged in "fraud or inequitable conduct"—when she wrote Dr. Majumder's name on the Agreement. There is record evidence Aponte believed she was merely identifying Dr. Majumder as a provider for whom the software would be used.

While her story may seem thin, its truth or falsity cannot be determined from this paper record.

Finally, at least under these facts, I am not convinced ratification can substitute for reformation. I found no reported decision in which ratification has been used to add new obligors—like PTMM and Aponte—whom the original written contract did not identify as obligors. *Cf. Life Inv'rs Ins. Co. of Am. v. Estate of Corrado*, 838 N.W.2d 640, 642 (Iowa 2013) (addressing the question of whether a party ratifies a contract containing the party's signature that was executed by an unknown person when the party does not object to the contract or challenge the signature and accepts benefits and obligations under the contract). As far as I can tell, that is not what happened in the cases cited by GreatAmerica. *See GreatAmerica Leasing Corp. v. Wahoo Prods. of Florida, Inc.*, No. 09-CV-137-LRR, 2011 WL 1559935, at *9 (N.D. Iowa Apr. 21, 2011) (granting judgment against defendant Wahoo on lease agreement and addendum to which Wahoo was a party); *GreatAmerica Leasing Corp. v. Davis-Lynch, Inc.*, No. 10-CV-13-LRR, 2011 WL 167248, at *1, *9 (N.D. Iowa Jan. 19, 2011) (granting judgment against defendant Davis-Lyncy on "C/CAMP Agreements" to which Davis-Lynch was a party); *Wells Fargo Fin. Leasing, Inc. v. Piggie Park Enters., Inc.*, No. 3:09-1752-JFA, 2010 WL 500454, at *3 (D.S.C. Feb. 5, 2010) (granting judgment against defendant Piggie Park on "Order Agreement and Lease Agreement" to which Piggie Park was a party); *Affiliated Corp. Servs. v. Englewood Cmty. Health Org., Inc.*, No. 98 C 7420, 1999 WL 652027, at *1, *4 (N.D. Ill. Aug. 20, 1999) (granting judgment against defendant ECHO on lease agreement to which ECHO was a party).

To recap: the words of the Agreement did not obligate Aponte or PTMM; the current record does not allow us to reform the Agreement; and I do not think ratification can substitute for reformation. So I believe the judgment against Aponte and PTMM should be reversed.

**GREER, Judge** (concurring in part and dissenting in part).

I respectfully dissent in part; I would affirm the district court and grant GreatAmerica summary judgment against PTMM but not Aponte. Under the record provided to us, even though Aponte only signed the name of the customer who ultimately would benefit from the software services on the GreatAmerica agreement, by its actions, PTMM ratified and agreed to be bound to the agreement for such software. Ratification of that contract occurred when PTMM accepted the software and paid GreatAmerica for the software over many months. We have no similar record as to Aponte or that she agreed to be *personally* liable as well.

While the majority opines that the trial court ruling provided a hurdle to summary judgment, I disagree. The majority highlights the contradiction that the district court denied summary judgment on the fraud claim because "a factual issue remained as [to] 'what Ms Aponte knew or intended,'" yet granted summary judgment on the contract claim. A factual dispute as to an element of one claim does not always preclude summary judgment on another claim. Here GreatAmerica raised a breach-of-contract claim and a fraud claim. The district court rejected summary judgment on the fraud claim citing a factual issue related to Aponte's fraudulent intent. The district court explained that there were "two possible inferences to be drawn from the facts *on this issue.*" (Emphasis added.) "This issue" in the fraud claim is Aponte's intent to deceive*. Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 735 (Iowa 2009) (noting one element of fraud requires proof that "the defendant intended to deceive the plaintiff"). As to that legal issue—fraud—the court believed that although Aponte asserted she did not intend the writing to be a signature, the court believed the two inferences were

"either it was merely the name of the physician associated with the practice or it was intended to be her signature." Aponte and PTMM contended this factual conflict in the fraud claim prohibited summary judgment in the contract claim. I disagree because Aponte's intent to deceive is not determinative of the contract claim under these facts.

Turning to the contract claim with PTMM, GreatAmerica was required to prove:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). The majority concedes that, on behalf of PTMM, Aponte said,

> Q. [W]as it your intent at that time to enter into some sort of a new contract to get electronic medical records? A. Yes.
> Q. Was the intent to do it in the name of Personal Touch Medical Management? A. Yes.

But the issue preventing summary judgment for the majority is that Aponte maintains she was unaware she was signing the contracts with *GreatAmerica* for software. Even so, we agree (1) PTMM/Aponte wanted software for her doctor clientele, (2) that clientele included Dr. Majumder, (3) Aponte agreed she placed Majumder's name on the document to identify him as a service provider of PTMM, (4) Aponte confirmed she had no authority to bind Majumder on the document, (5) PTMM wanted to purchase InSync software, (6) PTMM received and utilized InSync software, (7) PTMM made monthly payments to GreatAmerica for InSync

software, and (8) PTMM utilized InSync software until it stopped paying the GreatAmerica invoices for the software.

Simply put, the question is: Can Aponte bind her company to a contract she has not signed while reaping the benefit of the deal? While Aponte did not sign her name on the GreatAmerica Software Finance Agreement, she did place a signature on that agreement. The argument she did not read the agreement cannot win the day.

> [A] party is charged with notice of the terms and conditions of a contract if the party is able or has had the opportunity to read the agreement. A party is also bound by a document the party signs even though the party has not expressly accepted all of the contract provisions and is not aware of them.

*Advance Elevator Co. v. Four State Supply Co.*, 572 N.W.2d 186, 188 (Iowa Ct. App. 1997).

Even if we agree Aponte did not sign the agreement on behalf of PTMM, ratification may still occur. "Signature is not always essential to the binding force of an agreement. If accepted and acted upon by the parties as a binding engagement, mutuality appears without formal signature. This is elementary." *Henderson v. Henderson*, 114 N.W. 178, 179 (Iowa 1907). PTMM made nine and one-half total payments to GreatAmerica for the software product. Then PTMM breached the agreement by failing to make all payments. And because of that, GreatAmerica proved it was damaged. The district court found Aponte had ratified the contract by "accept[ing] the software, us[ing] it for at least nine months[,] and ma[king] payments on it."

Our supreme court has said, "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his

account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Abodeely v. Cavras,* 221 N.W.2d 494, 502 (Iowa 1974) (quoting Restatement (Second) of Agency § 82, at 210 (1958)). "There are two types of ratification: (1) ratification by the principal of the signature of an agent, and (2) ratification by an individual who had the power to avoid the contract but affirmed the contract." *Life Inv'rs Ins. Co. of Am. v. Estate of Corrado*, 838 N.W.2d 640, 645 (Iowa 2013). Whether the party "expressly or implicitly authorized a person to sign on his behalf is not a necessary fact to determine" ratification of a contract since a principal may ratify the act of an agent. *Id.* at 644. "In other words, if ratification exists a contract exists and the action is on the contract." *Id.*

As the special concurrence points out, our case law on ratification offers no case directly on point. While I agree that the typical ratification case addresses whether a signing party is bound under a contract, I disagree that the same premise cannot apply under these unusual facts. The core of a ratification argument is that someone denies they signed or denies knowledge of the contract itself yet accepted the benefits of the contract. In my analysis of these undisputed facts, ratification occurred in this case. Many of our cases involve the first type of ratification—ratification by the principal of the signature of an agent. *See, e.g.*, *Mayrath Co. v. Helgeson*, 139 N.W.2d 303, 306–09 (Iowa 1966) (holding ratification occurred where corporation knew employee accepted settlement agreement and corporation accepted benefit of contract); *In re Johnson's Estate*, 232 N.W. 282, 286–88 (Iowa 1930) (holding ratification occurred where cashier of bank acted as agent for the bank).

But the cases addressing the second type of ratification—ratification by an individual who had the power to avoid the contract but affirmed the contract— suggest failure to act is fatal.[2]  Aponte had the power to avoid the contract with GreatAmerica yet affirmed the terms by purchasing software, accepting software, and paying for software until the breach.  The subsequent conduct is the ratification of the contract.  Ratification of the contract under this record occurred and allows summary judgment as to the contract between GreatAmerica and PTMM.

Aponte, on behalf of PTMM, cannot save the day here.  I would affirm the summary judgment ruling on the contract claim only as to PTMM and enter judgment accordingly.

---

[2] In *French v. Northwestern Laundry*, 107 N.W. 430, 431 (Iowa 1906), the court found: "If the effect of this was to perpetrate a fraud on him, he should have at once announced his purpose to rescind, he should have refused to turn over his property and take the stock in payment.  Not having done so then he cannot be heard to do so now."  *See also Grymes v. Sanders*, 93 U.S. 55, 62 (1876) (stating a party benefitting from a contract "is not permitted to play fast and loose.  Delay and vacillation are fatal to the right which had before subsisted").  Likewise in *Windahl v. Vanderwilt*, 203 N.W. 252, 255 (Iowa 1925), the court confirmed, "It is elementary that a ratification of such an act must include the intention to give sanction and validity to the act, which would not be binding upon him except for his subsequent conduct in giving assent or confirmation thereto."